## THE PEOPLE v. EDWIN H. JONES.

(GENERAL TERM, THIRD DEPARTMENT, DECEMBER, 1870.)

An indictment for robbery charged the taking of money and bank bills, viz.: A certain sum in bills known as U. S. legal tender notes, and a certain sum in currency known as postal currency. The proof was that the moneys taken were national bank notes and fractional currency under the act of congress of March, 1863 (12 U. S. Stats at Large, 711, § 4).—*Held*, that there was a substantial variance between the indictment and proof given, and the jury should have been instructed to render a verdict for the prisoner, or the case should have been dismissed.

CERTIORARI to the Otsego sessions. The facts are sufficiently stated in the opinion of the court.

*N. C. Moak*, for the prisoner.

—— ——, for the people.

Present—MILLER, P. J., PARKER and HOGEBOOM, JJ.

MILLER, P. J. The prisoner was tried and convicted upon an indictment for robbery at the Otsego sessions in the month of September, 1869. Upon the certificate of the county judge, judgment was suspended upon the conviction and the case is brought here by certiorari for review. One of the counts contained in the indictment was quashed upon the ground that it charged no offence against the prisoner. The other count upon which the conviction was had, after alleging a felonious assault upon the person of one Burton, and

that the prisoner put him in bodily fear and danger of his life, charged that, from Burton's person, and by violence, he feloniously did steal, &c,, certain money and bank bills, "to wit, six dollars and eighty-five cents in bank bills, usually called United States legal tender notes, as follows: One bill of the denomination of five dollars, one bill of the value of one dollar, and eighty-five cents in currency, usually known and called postal currency." The proof upon the trial was undisputed that the bills were national bank bills, and not "United States" notes nor "legal tender notes." The "currency" alleged to have been stolen was proved to be what is usually called fractional currency, issued under the act of congress passed on the 3d of March, 1863 (12 U. S. Statutes at Large, 711, § 4), which provided that, in lieu of postage and revenue stamps for fractional currency, and of fractional notes commonly called fractional currency, and of fractional notes commonly called postal currency, issued or to be issued, the secretary of the treasury might issue fractional notes. At the close of the testimony on behalf of the people, and at the close of the trial, the counsel for the prisoner requested the court to instruct the jury to render a verdict for the defendant, on the ground of a variance between the indictment and proof as to the property alleged to have been taken, and also to dismiss the case upon the same ground. Each of these requests was refused, and exceptions duly taken to the rulings of the court.

I think that there was error in refusing the requests made by the counsel for the prisoner. The rule is well settled, that any difference in *substance* between the statements in the indictment and the evidence as to the offence charged is fatal. (2 Russ. on Crimes, 713.) Whether there was a substantial variance between the property described and the evidence given is not, perhaps, of vital importance in the case at bar, as there are other sufficient grounds in my opinion upon which the objections urged can be upheld. It is of no little consequence to a prisoner arraigned for a high criminal offence that he should be

advised of the real character of the charge made, so that he may be prepared to defend himself against it. He has a right to rely upon the statement set forth in the indictment, and it may well be that he might not be prepared to meet allegations on the trial differing from those averred, even in reference to the character of the money charged to have been taken from the person of the prosecutor. If it be material at all to describe the property feloniously and violently taken, which I shall hereafter have occasion to discuss, then it was equally essential that the prisoner should be advised of the nature of the property thus taken.

In this connection it is proper to advert to another rule applicable to the question presented. It is said in Greenleaf's Evidence, § 65, that "when a person or thing necessary to be mentioned in an indictment is described with unnecessary particularity, all the circumstances of the description must be proved, for they are all made *essential* to the identity." The learned author illustrates the proposition made by referring to an indictment for stealing a *black* horse, where the animal, but not *color*, need be stated, says: "Yet if stated, it is made descriptive of the particular animal stated, and a variance in the proof is fatal." He also states the case of an indictment for stealing a bank note, where it would be sufficient to describe it generally as a bank note of such a denomination or value. Yet if the officer who signed it be also named, it must be strictly proved.

So also if a statute authorizes a general averment, if the pleader, instead of availing himself of it, proceed to particulars, he must prove the description as alleged, although the averment is unnecessary. (Ros. Cr. Ev., 93, 94.) The books abound with cases where the slightest variation in the description of property alleged to have been stolen has been held to be a fatal variance upon the trial of the indictment. Hence the word *live*, in describing turkeys stolen, was held not to be surplusage on an indictment for larceny. (Ros. Cr. Ev., 94; *Edwards' Case*, Russ. & Ry., 497.) So a heifer two and one-half years old was held to be wrongfully described as

a cow. (Rosc., 94; *Cook's Case*, 2 E. P. C., 16; 1 Leach, 105.) In an indictment for stealing two colts, where it appeared that one was a mare four years old, it was held to be insufficient. (Rosc., 94.) Various other cases are cited where a variance equally slight has been held to be fatal to a conviction. (See Greenl. Ev., *supra*; Roscoe's Ev., 95; Russ. & Ry., 356; 1 Moody, 303; Jebb, 59; 2 Whart., 1704; 2 Dana, 298.) Various cases also hold that variances are fatal, although the allegation was not essential. (*Rex* v. *Drew*, 1 E. P. C., 45; *Rex* v. *Jenks*, 2 E. P. C., 514; *Rex* v. *Cranage*, 1 Salk., 385.)

The cases to which our attention has been directed by the counsel for the prosecution do not conflict with the doctrines laid down in the authorities cited. In *The People* v. *Loop* (3 Park., 559), the indictment charged the prisoner with a larceny of certain money, " to wit, current bank bills of the value of fifteen dollars, silver coin of the value of three dollars." It will be noticed that the bills are not particularly described, and although the court held that the description was sufficiently specific to constitute the offence, it did not determine the question whether, if a more specific description had been averred, the prosecution would not have been held to strict proof in accordance with the distinction made in the cases referred to.

In *The People* v. *Quinlan* (6 Park., 9), it was held that the grand jurors might omit a matter of description, which they could not ascertain when the substance of the offence is set forth. This principle has long been established in criminal jurisprudence, and in no way interferes with the doctrine that when a particular and definite description is given, it must be proved on the trial. An indictment for robbery must allege the taking of the property, as in larceny, although perhaps the same degree of particularity is not required. (*People* v. *Loop*, 3 Park., 560; 2 Bish. Prac., § 944; 2 Wheat. Cr. L., § 1704.) But when it avers the property definitely, it is not enough, in my opinion, to prove another kind of property. An acquittal upon an indictment

for robbery is a bar to an indictment for larceny of the same property, where it is alleged to have been taken at the same time. (*People* v. *McGowan*, 17 Wend., 386; *People* v. *Loop*, 3 Park., 561.) Applying this rule, it would seem to be very manifest that an acquittal or conviction upon this indictment, for taking the money alleged, would not prevent another indictment for stealing a different kind of money.

A point is made by the prosecution, that the proof is direct in regard to the allegations as to the currency taken. It is quite clear that the currency was issued under the act of congress of 1863, before cited, while the currency called postal currency, which consists of postage stamps, was issued under the act of congress of July 17, 1862. (12 U. S. Stat. at Large, 592.) The two are entirely different, and the testimony is undisputed that the currency stolen was United States fractional currency.

Even if the description of the property was unnecessary, and a general averment might have been sufficient, yet the pleader having described it with unnecessary particularity, he must prove the description as alleged, and it cannot be rejected as surplusage. (See *supra;* Ros. Cr. Ev., 94, 95; Green. Ev., § 65.)

As the judge erred upon the trial, the conviction must be reversed and a new trial ordered.